## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **CASSANDRA M. PRUITT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ALLIED UNIVERSAL** | ) | **CIVIL ACTION FILE** |
| **SECURITY SERVICES** | ) | **NO.:** |
| **f/k/a ALLIEDBARTON** | ) | |
| **SECURITY SERVICES, LLC** | ) | |
| **and KRISTEN ARGUS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Cassandra M. Pruitt ("Plaintiff" or "Ms. Pruitt"), and files this, her Complaint and jury demand against the above-named Defendants, ALLIED UNIVERSAL SECURITY SERVICES f/k/a ALLIEDBARTON SECURITY SERVICES, LLC ("Defendant Allied Universal" or "Allied Universal") and KRISTEN ARGUS ("Defendant Argus" or "Ms. Argus"), showing the Court the following:

## NATURE AND PURPOSE

1.

This is an action for unlawful employment, discrimination on the basis of Plaintiff's sex (female) and retaliation arising out of Title VII of the Civil Rights Act

1

of 1964 as amended, including the Civil rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and  29 U.S.C. §206(d) ("FLSA") also known as the Equal Pay Act of 1963, and state law claims intentional infliction of emotional distress and negligent supervision and retention. Plaintiff seeks declaratory and injunctive relief, back pay and front pay, compensatory and punitive damages against Defendant, attorney's fees and costs.

## JURISDICTION AND VENUE

2.

The claims herein present Federal questions, and jurisdiction of this Court is predicated under 42 U.S.C. § 2000 and 29 U.S.C. § 201 *et seq.*

3.

This Court has original jurisdiction over Plaintiff's Title VII and FLSA claims under 28 U.S.C. § 1331.

4.

This Court has supplemental jurisdiction over pendent state law claims under 28 U.S.C. § 1367 because said claims arise from the same nucleus of operative facts as the federal claims from which form the basis of the Complaint.

5.

Venue is proper, pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices alleged below were committed in the Northern District of the State of Georgia, Atlanta Division.

## COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES

6.

Ms. Pruitt satisfied all administrative prerequisites to institute this action under Title VII.   Specifically, Ms. Pruitt filed her first timely charge of discrimination against the Defendant at the Atlanta District Office of the Equal Employment Opportunity Commission ("EEOC") on April 16, 2019, for discrimination based on her sex, equal pay and retaliation.  (See Exhibit 1).

7.

After receiving the EEOC charge, Defendant retaliated against Ms. Pruitt and continued to retaliate against her. (See Exhibit 1).  On May 28, 2019, Ms. Pruitt filed a formal Charge of Retaliation against the Defendant with the EEOC. (See Exhibit 2).

8.

On January 30, 2020, the EEOC issued and mailed out the "Notice of Suit Rights".  (See Exhibit 3 & 4).  Ms. Pruitt received the Notice of Suit Rights a few

days after.  Ms. Pruitt brings this suit within ninety (90) days of receipt of the Notice of Suit Rights.

## **PARTIES**

9.

Plaintiff, Cassandra Pruitt, is and has been at all times relevant hereto a citizen of the State of Georgia residing in Cobb County, in the Northern District of Georgia.

10.

Defendant Allied Universal is a foreign for-profit corporation organized under the laws of the State of Pennsylvania and is not registered to conduct business in the State of Georgia.  Defendant Allied Universal maintains corporate headquarters at 161 Washington Street, Suite 600, Conshohocken, Pennsylvania 19428.

11.

This Court has personal jurisdiction over Defendant Allied Universal as it has minimum contacts with and conducts business within the geographic boundaries of this Court. Defendant Allied Universal maintains an office located at 1438 West Peachtree Street NE, Suite 100, Atlanta, Georgia, 30309.

12.

Defendant is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b), FLSA § 3(c), 29 U.S.C. § 203(e), and employs more than 500 persons for working days and of twenty (20) calendar weeks in the

current or proceeding calendar year and has an annual gross income well over $500,000.

13.

Defendant Kristen Argus is now and at all times relevant to this action, a resident of the State of Georgia, is subject to the jurisdiction of this Court and can be served at her residence located at 1945 N. Ridgeway Road, NE, Atlanta, Georgia 30345.

14.

At all times relevant to this action, Defendant Argus was Ms. Pruitt's second level supervisor and supervised Tony Nagel, Joshua Emmitt and Kenyatta McDonald.

## **FACTUAL ALLEGATIONS**

15.

The foregoing Paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

16.

Ms. Pruitt was hired by Defendant as Security Account Manager in February 2015, to work at Atlanta Medical Center (then Tenet now WellStar Healthcare) under Security Director Richard C. Westgate.

17.

In December 2015, Mr. Westgate was removed from the Security Director position for misappropriation of funds from the client, Atlanta Medical Center.

18.

All previous Security Directors were male.   All previous male Security Director's (as far back as the research from the inception of the Security Director's position), had a salary Security Account Manager to assist them with the account responsibilities.

19.

All previous male Security Directors made a higher salary than Ms. Pruitt currently makes while they had a Security Manager to do a good portion of the account responsibilities.

20.

Ms. Pruitt was required to do the job of the Security Manager and Security Director.  Ms. Pruitt is the first Security Director who has been required to fill both positions.

21.

Ms. Pruitt was responsible for finding the pay discrepancy that her former bosses at Allied Universal had to re-pay to their current client, WellStar Health System.

6

22.

After finding this, Ms. Pruitt was called to a closed door meeting on January 4, 2016, with her Director of Operations and the Vice President of the Southeastern Region which lasted approximately 31 minutes, at which time, Ms. Pruitt was no longer considered a good fit for the company.  Ms. Pruitt was yelled at, told that she did bad work, bullied, degraded and told that she had to sign a document that accused her of things that her previous Security Director (supervisor and direct report) was terminated for.  All things that could easily be proven that she did not do.

23.

In this meeting, Ms. Pruitt was intimidated by two males that were higher up than her in the command structure, who were telling her how horrible of an employee she was when all she had done was report a discrepancy that she had found that Mr. Nagel and Mr. Westgate allowed the company to make $49,000 off of Wellstar AMC.

24.

Ms. Pruitt was told to keep this discrepancy to herself and it was not repaid until Ms. Pruitt went to Human Resources ("HR") over six months later.

25.

Security Directors as far back as the past 17 years for Atlanta Medical Center-Downtown, had a Security Manager and Site Supervisor and/or Training Supervisor to provide assistance in running the site.

26.

Allied Universal paid all male Security Directors for Atlanta Medical Center-Downtown prior to Ms. Pruitt, more than she made while working the combined positions of Security Manager and Security Director. Some were equally qualified, some were less qualified, and some were more qualified that Ms. Pruitt when she started.

27.

When Ms. Pruitt was removed from Atlanta Medical Center-WellStar, she had 4 years of Healthcare Security Administration work experience and she was still being paid less than all other Security Directors.  Ms. Pruitt currently has 5 years of Security Account Management experience and she still has not been given a raise.

28.

In October 2016, Mr. Jacobs, Security Director for Atlanta Medical Center-South Campus, who was far less qualified than Ms. Pruitt, got a pay raise when the client, Atlanta Medical Center, gave Allied Universal a bill-rate/pay rate increase.

29.

In October 2016, the client, Atlanta Medical Center, WellStar, also gave a bill-rate increase for the Atlanta Medical Center-Downtown Campus Security Director position but unlike Mr. Jacobs, Ms. Pruitt did not receive a pay raise and she still has not.

30.

Ms. Pruitt was not allowed to take time off.  Ms. Pruitt was not allowed to have a vacation or holiday without her work phone having to still be on to accept calls.

31.

Ms. Pruitt was denied FMLA with the proper paperwork in place and had to go to HR to have them explain to her DO at the time, Tony Nagel, that he couldn't deny the request.

32.

It was Mr. Nagel's responsibility to pay Ms. Pruitt while on FMLA leave and he did not.

33.

Two years later, while on FMLA trying to heal from major surgery, Ms. Pruitt was still contacted via her personal email, about the condition of the site, forcing her to return to work early and causing her undo stress delaying her healing process.

34.

When Ms. Pruitt worked at WellStar AMC and returned from FMLA, she was not able to take a vacation or even turn her phone off to attend church.

35.

Ms. Pruitt had surgery in November 2018 and had to answer/return/place calls while taking strong medication while still in the recovery room because there was no one else the account had that could handle that of a salary employee. Ms. Pruitt had to return to work less than 48 hours later to do payroll because there was no one else who can do it. Ms. Pruitt had to return to work with 3 JP drains hanging from her person to complete said payroll.

36.

All Security Director's before Ms. Pruitt were allowed to take vacation, turn their phones off to simply rest, if needed be, and not be on call 24/7, 365 days.

37.

Robert Stevens took the Security Director's job at Atlanta Medical Center-South and the bill-rate went from $37.08 to $48.07. This bill-rate is $2.96 more than the October 2016 adjusted bill-rate of $45.11 for Atlanta Medical Center-Downtown.

38.

Mr. Steven's, Account Manager of Atlanta Medical Center-South, was hired as a brand new Account Manager who had no experience in the healthcare security field (or security at all) at a bill-rate that is $28.08 more than Ms. Pruitt was hired as a new Account Manager.

39.

Atlanta Medical Center-South Campus has approximately 150 beds versus the Level 1 Trauma Center Ms. Pruitt was responsible for having 450 beds.  Atlanta Medical Center-South ran 800 security hours to the 1600 security hours Ms. Pruitt was in charge of running.

40.

Ms. Pruitt annual salary in October 2016, she was being paid approximately $31.73 per/hour.  This pay rate was more than covered at the $40.00/per hour bill-rate that WellStar was paying Allied Universal at the time.  The additional $5.11 per/hour that Allied Universal started being paid in October 2016, was complete profit for the now 2 salary positions that Ms. Pruitt worked.

41.

Robert Stevens was hired as a Security Account Manager just as Ms. Pruitt was.  Ms. Pruitt was hired with much more responsibility than Mr. Stevens, a male,

yet Mr. Stevens was hired at a payrate of $65,000 annually and Ms. Pruitt was only paid $52,000 annually when hired.

42.

During the January 4, 2017 meeting, Vice President Brian McKay and Tony Nagel told Ms. Pruitt she would take on all responsibilities of the Atlanta Medical Center Security Department with no financial increase.  Mr. McKay and Mr. Nagel maintained this position until James Moore, a client, called a meeting directing Mr. McKay and Mr. Nagel they would give Ms. Pruitt a stipend while she performed bot Security Director and Security Manager.  Mr. McKay and Mr. Nagel choose this stipend to be a lower wage than all males holding only the Security Director position before her.

43.

Ms. Pruitt was told she would be responsible for the security departments at both Atlanta Medical Center-Main Campus and Atlanta Medical Center-South Campus from May 2017–September 2017.  Ms. Pruitt again received no compensation for now running 2 hospitals despite Allied Universal continuing to bill Atlanta Medical Center-WellStar for 2 Security Directors.

44.

In January 2019, Allied Universal was required to repay Atlanta Medical Center-WellStar $17,000 for one of the Security Director positions because they

found out Ms. Pruitt did not receive payment for her duties but rather, Allied Universal profited the monies.  Atlanta Medical Center-WellStar gave Allied Universal the opportunity to pay Ms. Pruitt the $17,000 for the duties she performed from May 2017 –September 2017 at Atlanta Medical Center-South and working as Security Director, but rather than pay Ms. Pruitt for a job she completed, Allied Universal choose to give the client, Atlanta Medical Center-WellStar the $17,000.

45.

Ms. Pruitt was told she would be responsible for both the Security Director responsibilities and her responsibilities as Security Manager starting December 2015.  Ms. Pruitt maintained both job duties until she was removed from Atlanta Medical Center-WellStar in April 2019.

**COUNT I**

**<u>TITLE VII – SEX DISCRIMINATION</u>**

46.

The foregoing Paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

47.

Ms. Pruitt was subjected to differential treatment than similarly situated employees based upon her sex.

48.

Ms. Pruitt was appointed as the Security Director and performed the duties of the Security Director other skills were equal to or better than the male employee who performed the same duties, had the same responsibilities which are performed under similar working conditions.

49.

Defendants aforesaid actions violated Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. §§ 2000e *et seq.*

## COUNT II

## EQUAL PAY ACT

50.

The foregoing Paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

51.

Ms. Pruitt was paid less than male employees for the same work.

52.

Ms. Pruitt was qualified to receive the higher wages as the male employees doing the same or similar work.

53.

Defendants aforesaid actions violated the Equal Pay Act, 29 U.S.C. § 206(d).

14

## COUNT III

## **TITLE VII – RETALIATION**

54.

The foregoing Paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

55.

Ms. Pruitt was engaged in protected activity, among other things, when she complained about being paid less than the male employees in the same position, doing the same job.

56.

Defendant Allied Universal has engaged in intentional retaliation in the terms and conditions of Ms. Pruitt's employment, including, but not limited to:

(a)    Tony Nagel denied Ms. Pruitt from going on FMLA leave to have surgery which forced her to go to HR in order to get the FMLA leave;

(b)    Increased her responsibilities and duties without additional compensation;

(c)    Defendant Allied Universal removed the Director who worked with Ms. Pruitt when they put her in that position without filling her previous position;

(d)    Ms. Pruitt was required to work 24 hours/7 days where her phone had to be on 24 hours before she had someone else that worked with her;

(e)     While on FMLA leave, Ms. Pruitt was harassed when they continued to contact her on her personal emails about when she would come back to work and asking her work-related questions.  The policy was that while an employee was on FMLA leave, the work email and work phone are turned off.

(f)     Ms. Pruitt was denied her vacation time; and

(g)     Defendant Allied Universal filed a frivolous HR complaint against Ms. Pruitt.

57.

Defendant's conduct violates Title VII.

58.

On May 28, 2019, Ms. Pruitt filed a second Charge of Discrimination alleging retaliation with the EEOC.

59.

On or about April 19, 2019, Defendant Allied Universal received the Charge of Discrimination and on April 24, 2019, Ms. Pruitt received a phone call to come into the office the next morning.  When Ms. Pruitt went into the office on April 25, 2019, she was removed from her position at WellStar Hospital.

60.

On May 28, 2019, Ms. Pruitt filed her second Charge of Retaliation.

## COUNT IV

## <u>INTENTIONAL INFLICTION OF EMOTIONAL STRESS</u>

### 61.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

### 62.

Defendants conduct towards Mr. Pruitt mentioned herein was intentional and/or reckless, extreme and outrageous, and caused Mr. Pruitt severe shame, humiliation, embarrassment and emotional distress of a nature that no reasonable person can endure.

### 63.

Defendants knew or should have known that such conduct would result in severe emotional distress by Mr. Pruitt.

### 64.

As a result of Defendants' conduct, Mr. Pruitt has and will continue to suffer damages for which she is entitled to recover as provided by law.

## COUNT V

## <u>STATE LAW– NEGLIGENT SUPERVISION AND RETENTION</u>
### (Against Defendant Allied Universal)

### 65.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

### 66.

Defendant Allied Universal knew, or in the exercise of ordinary diligence, should have known of its employees' sexual discrimination and retaliation of Ms. Pruitt.

### 67.

Defendant Allied Universal owed a duty to Mr. Pruitt to retain employees who would lawfully conduct themselves and not engage in discriminatory and tortious conduct.

### 68.

Defendant Allied Universal breached the aforementioned duty by negligently supervising and retaining its employees who continued to harass Mr. Pruitt and therefore, continued to expose Ms. Pruitt to a hostile work environment.  Further, Defendant Allied Universal ratified, condoned or adopted its employees' conduct via inaction.

69.

Defendant Allied Universal acted maliciously, willfully, wantonly, oppressively, and with specific intent to injure Ms. Pruitt and/or her federally protected rights.  Additional and in the alternative, Defendant Allied Universal acted recklessly toward Ms. Pruitt and/or her federally protected rights. Accordingly, Defendant Allied Universal is thus liable to Ms. Pruitt for all damages.

## COUNT VI

## PUNITIVE DAMAGES
### (Against All Defendants)

70.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

71.

Defendants' actions with respect to Ms. Pruitt have shown willful misconduct, malice, fraud, wantonness, oppression and complete disregard of care, thus entitling Ms. Pruitt to an award of punitive damages in order to deter, punish and penalize Defendants for and from such conduct in the future.

19

## COUNT VII

## ATTORNEYS FEES
### (Against All Defendants)

72.

The foregoing paragraphs are re-alleged, restated, and incorporated herein as though fully set forth herein.

73.

Ms. Pruitt is entitled to an award of attorneys' fees and expenses of litigation on each and every cause of action alleged herein, because Defendants have acted in bad faith, been stubbornly litigious, and caused Ms. Pruitt unnecessary trouble and expense.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiff respectfully requests that this Court:

1.     Grant Plaintiff a trial by jury as to all triable issues of act;

2.     Grant declaratory judgment that Plaintiff's right under the FLSA, Title VII, Section 1981, and Georgia State Laws have been violated;

3.     Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

4.     Award compensatory damages in an amount to be determined by a jury;

5.     Award appropriate back overtime pay, reimbursement for lost salary,

20

unpaid wages, and compensate for other damages in amounts to be shown at trial;

6.      Award prejudgment interest on any award of back pay made by the jury as required by law;

7.      Award liquidated damages equal to any back pay for Defendants' willful violation of the FLSA;

8.      Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to be sufficient to deter such conduct in the future;

9.      Award Plaintiff's attorneys' fees, costs, and disbursements; and

10.    Award Plaintiff such further and additional relief as may be just and appropriate.

This 30th day of April, 2020

Respectfully submitted,

**THE BURKE LAW GROUP, LLC**

*/s/ E. Earle Burke*
E. Earle Burke
Georgia Bar No. 095550
*Attorney for Plaintiff*

199 Peters Street, Suite A
Atlanta, GA 30313
Telephone No.: (404) 688-1210
Facsimile No.: (404) 688-1251
Email: eburke@burkelawatl.com

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned herby certifies that he has prepared the within and foregoing document in accordance with L.R. 5.1 (N.D.Ga.) and L.R. 7.1 (b) (N.D.Ga.). Specifically, counsel certifies that he has used 14 pt. Times New Roman as the font in these documents.

This 30th day of April, 2020.

Respectfully submitted,

**THE BURLE LAW GROUP, LLC**

*/s/ E. Earle Burke*_____

E. Earle Burke

Georgia Bar No. 095550

*Attorney for Plaintiff*

199 Peters Street, SW
Suite A
Atlanta, GA 30313
Telephone No.: (404) 688-1210
Facsimile No.: (404) 688-1251
Email: eburke@burkelawatl.com